1

2

3

4

5

6

7

8

9

10          IN THE UNITED STATES DISTRICT COURT FOR THE

11                      EASTERN DISTRICT OF CALIFORNIA

12

13   THOMAS FARRUGIA,                    )     1:08-cv-0053 AWI
                                          )     (1:92-cr-5164 AWI)
14               Plaintiff,               )
                                          )     SCREENING ORDER ON
15        v.                              )     PLAINTIFF'S FOURTH
                                          )     AMENDED COMPLAINT
16   KEVIN P. ROONEY, BENJAMIN B.         )
     WAGNER, ELIZABETH EGAN,              )     Doc. # 34
17   BUREAU OF NARCOTIC                   )
     ENFORCEMENT, and Does 1-10,          )
18                                        )
                 Defendants.              )
19   _____ )

20

21        Currently before the court is a document titled "Fourth Amended Complaint,"

22   (hereinafter the "4AC") which was filed by plaintiff Thomas Farrugia (hereinafter, "Farrugia" or

23   "Plaintiff") on June 6, 2011.  Doc. # 34.  Plaintiff's 4AC represents the most recent of many prior

24   attempts by Plaintiff to secure samples of "white powders" currently in the custody of the

25   California Bureau of Narcotic Enforcement for "complete and accurate testing."  The instant

26   action is styled as an action pursuant to 42 U.S.C. § 1983 with respect to the state Defendants

27   and as a claim pursuant to Bivins v. Six Unknown Named Agents of Federal Bureau of

28   Narcotics, 403 U.S. 388 (1971) with respect to the federal Defendants.  The court notes this

     action arises out of Plaintiff's conviction in 1992 to one count each of conspiracy to manufacture

methamphetamine and possession of a listed substance, ephedrine.  Because this action is brought by a plaintiff currently in federal custody against governmental officers, the court screens the complaint in the absence of any response by the governmental defendants.  For the reasons that follow, the court will determine that Plaintiff's 4AC fails to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

The factual basis giving rise to the criminal case against Plaintiff has been summarized in numerous prior filings by the court.  An extensive summary may be found in the court's order denying Plaintiff's motion for relief pursuant to 28 U.S.C. § 2255, filed as Document 823 in case number 1:92-cr-5164.  The following is a somewhat abbreviated version of facts alleged by Plaintiff and previously set forth in court documents.

The underlying criminal case, 92cr5164, charged five defendants with violations pertaining to the manufacture of methamphetamine and the possession of ephedrine, a necessary precursor in the manufacture of methamphetamine.  Three of the five defendants were convicted by plea of guilty and two defendants, Donald Kapperman and Plaintiff were convicted in separate jury trials.  For purposes of the present action, the facts pertinent to Plaintiff's instant action revolve around three containers of "white powdery substance" that were recovered during the investigation of the criminal case.  At the outset of the investigation, Detective Toby Rien of the Fresno County Sheriff's Office sold a 55 pound "tin" of pure ephedrine to co-defendant Morgan, who resided in Fresno, California.  Following the sale to Morgan, co-defendant Kapperman met with Morgan in Fresno and then drove to Lancaster, California, while being followed by law enforcement officers.  After Kapperman left Morgan, Morgan reported to Rien that Kapperman was in possession of one-half of the 55 pounds of pure ephedrine that Morgan had purchased from Rien. Sometime after Kapperman returned to his residence in Lancaster, police secured and searched the residence and an out-building which was found to contain a variety of laboratory glassware, an assortment of chemicals, a notebook and other documents, and a box of "white powdery substance."  Some of the documents found at the Lancaster residence tied Plaintiff to other co-defendants and contained information indicating Plaintiff had knowledge pertaining to

2

the manufacture of methamphetamine.  Police searched Plaintiff's residence in Oakley, California and there seized another box of "white powdery substance" that turned out to be a mix of chemicals containing about 45% ephedrine.  Thus, this action concerns three containers of suspected ephedrine.  To avoid confusion these are referred to as the Fresno Substance, the Lancaster Substance and the Oakley Substance.  There appears to be no dispute that the Fresno Substance consists of about 25+ pounds of pure ephedrine which was provided by the California Bureau of Narcotics as "bait" in the investigation that lead to the criminal charges against the five Defendants.  At trial, the government represented that the Lancaster Substance represented the other 25+ pounds of the Fresno Substance, however Farrugia disputed this and presented a chemical analysis by his own expert that indicated the Lancaster Substance was not pure ephedrine, but was a mix containing about 55% ephedrine and the balance of other unidentified chemicals.

At the time of trial, Plaintiff sought to obtain a more complete testing of the Oakley and Lancaster Substances to prove that those substances are different from one another and different from the Fresno Substance.  Plaintiff's attorney was able to obtain chemical testing but not to the level of specificity that Plaintiff desired.  Basically, the chemical testing that Plaintiff was able to obtain showed that neither the Oakley or Lancaster Substances contained any methamphetamine, that both the Lancaster and Oakley Substances contained somewhere between 40 and 50% ephedrine and a mix of other, unidentified chemicals, and that the Oakely and Lancaster Substances were not identical to each other,  It has consistently been Plaintiff's contention that a complete forensic analysis of the pH, binders and adulterants present in the Lancaster and Oakley Substances will establish Plaintiff's contention that the Lancaster Substance was not the same material as the Fresno Substance and that the Oakley and Lancaster Substances were different from each other.  Plaintiff contends that additional, and more detailed chemical testing will provide information from which Plaintiff can assert a claim for actual innocence.  Plaintiff does not present a claim of actual innocence in the present action or indicate how the establishment of his contentions with regard to the composition of the Lancaster and Oakely Substances would lead to a finding of actual innocence.

1

**PROCEDURAL HISTORY**

2        Plaintiff was convicted by jury trial in 1994 of a single count of conspiracy to

3 manufacture methamphetamine and possession of a listed substance and aiding and abetting.

4 Judgment was entered on November 15, 1994.  An appeal was taken and the conviction and

5 sentence were affirmed.  United States v. Farrugia, 1996 WL 403026 (9th Cir. 1996).  Of some

6 significance to this action, Plaintiffs' direct appeal did not raise any issues pertaining to the

7 testing of the Lancaster and Oakley substances.  Plaintiff also collaterally challenged his

8 conviction and sentence by way of motion pursuant to 28 U.S.C. § 2255 in civil case number 98-

9 cv-5252.  Plaintiff's 2255 motion raised, *inter alia*, the issue of the completeness of testing of the

10 Lancaster, Fresno and Oakley Substances in the context of a claim of ineffective assistance of

11 counsel.  Plaintiff's 2255 was denied in its entirety by an order filed on October 10, 2000.  Doc.

12 Number 823.  The instant case action commenced on January 11, 2008.

13       On January 24, 2011, the court dismissed Plaintiff's Third Amended Complaint in the

14 instant action and granted leave to amend (the "January 24 Order").  In the January 24 Order, the

15 court noted that Plaintiff had filed fifty-five prior motions or requests seeking production of

16 samples of the three Substances for the purpose of chemical testing.  The number of motions or

17 requests now stands at something closer to sixty.  The instant 4AC was filed on June 6, 2011.

18 Since the filing of his 4AC, Plaintiff has restated his request for relief in the form of a Motion for

19 Injunctive Relief, filed on August 13, 2012, and a request for "Expedited Release of Untested

20 Trial Exhibits 5-A and G-1," also filed on August 13, 2012.

21

**LEGAL STANDARD**

22       The court is required to screen complaints brought by prisoners seeking relief against a

23 governmental entity of officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25 "frivolous or malicious," or that fail to state a claim upon which relief may be granted, or that

26 seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(1),

27 (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

28 shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

4

1  state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(2)(B)(ii).

2       A complaint fails to state a claim upon which relief can be granted if there is a failure to

3  allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal

4  theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  A

5  complaint must set forth factual allegations sufficient "to raise a right to relief above the

6  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)   ("a plaintiff's

7  obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

8  conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The

9  pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require

10 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

11 harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

## DISCUSSION

13      It is important to place Plaintiff's current action in the broader context of Plaintiff's

14 ongoing efforts to force the entity in custody of the Oakley and Lancaster Substances to produce

15 samples for extensive chemical analysis.  Essentially the same claim was presented by Plaintiff in

16 his motion for habeas relief pursuant to 42 U.S.C. § 2255 in the context of a claim for ineffective

17 assistance of counsel.  See Doc. # 823 of Case Number 92cr5164 at 18:1 - 21:12.  In denying

18 Farrugia's claim of ineffective assistance of counsel with regard to the testing of the Oakley,

19 Fresno and Lancaster Substances, the court found that Farrugia's attorney was able to establish

20 what Farrugia sought to show with regard to the Oakley and Lancaster Substances – that neither

21 contained methamphetamine or pure ephedrine but were a mix of chemicals containing about

22 half ephedrine and half other chemicals.  Because the court decided Farrugia's claims regarding

23 the Substances on the merits, he may not raise the issue again on a successive habeas claim.  See

24 Kuhlmann v. Wilson, 477 U.S. 436 (1986) (a court may not reach the merits of successive claims

25 that raise grounds identical to grounds heard and decided on the merits in a previous petition).

26      "A motion under § 2255 is generally the exclusive remedy for a federal prisoner who

27 seeks to challenge the legality of confinement, Muth v. Fondren, 676 F.3d 815, 818 (9th Cir.

28 2012), and consequently an inmate who unsuccessfully petitions under § 2255 is generally barred

1    from bringing claims previously presented and decided on the merits. Kuhlman, 477 U.S. at 451.

2    Under exceptional and rare circumstances a petitioner may avoid the bar against successive

3    claims where the "ends of justice" so demand. Id. Section 2255(e) provides a limited "escape

4    hatch" in cases where the remedy under section 2255 is "'inadequate or ineffective to test the

5    legality of [the petitioner's] detention.'" Muth, 676 F.3d at 818. This circuit has held that "a §

6    2241 petition is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim

7    of actual innocence and (2) has not had an 'unobstructed procedural shot' at presenting that

8    claim." Stephens v. Herrera, 464 F.3d 895, 898 (9th Cir. 2006). The Ninth Circuit has

9    established that the standard for pleading a claim for actual innocence is the standard set forth in

10   Bousley v. United States, 523 U.S. 614 (1998). Muth, 676 F.3d at 819. The standard set forth in

11   Bousley provides that to make a claim of actual innocence a petitioner "must demonstrate that, in

12   light of all the evidence, it is more likely than not that no reasonable juror would have convicted

13   him." Bousley, 523 U.S. at 623 (internal quotations and citation omitted).

14        Plaintiff has made it clear that the purpose of his 4AC is to compel release of the Oakley

15   and Lancaster Substances for the purpose of thorough chemical testing in order to present a later

16   claim of actual innocence, presumably in a motion pursuant to 28 U.S.C. § 2241. Plaintiff's

17   basic contention is that the continuing refusal to grant access to samples of the Lancaster and

18   Oakley Substances constitutes a violation of Plaintiff's due process rights under the Fourteenth

19   Amendment. Plaintiff's Third Amended Complaint was screened by Magistrate Judge Seng,

20   who applied the Supreme Court's holding in District Attorney's Office for the Third Judicial

21   Dist. v. Osborne, 557 U.S. 52 (2009) ("Osborne") to reach the conclusion that Plaintiff's Third

22   Amended Complaint failed to state a claim for which relief could be granted. As the Magistrate

23   Judge's January 24 Order noted, the Osborne Court held a defendant who is convicted after jury

24   trial has a lesser liberty interest because the presumption of innocence is removed. Osborne, 557

25   U.S. at 68-69. As a consequence, the remedies available to the convicted need not parallel those

26   available at trial and a federal court can only intervene in the state's refusal to provide relief

27   where the post-conviction relief available to the convicted "'offends some principal of justice so

28   rooted in the traditions and conscience of our people as to be ranked as fundamental' or

6

1  'transgresses any recognized principle of fundamental fairness in operation.' [Citation]." Id. at

2  69 (quoting Medina v. California, 505 U.S. 437, 448 (1992)).

3       At issue in Osborne is whether a person who has been convicted can sustain a federal

4  claim to compel production of stored samples for DNA analysis in preparation for making a

5  claim of actual innocence by means of a suit pursuant to 42 U.S.C. § 1983, or pursuant to Bivins.

6  The Osborn court held a convicted defendant has no free-standing substantive due process right

7  to access to states' DNA evidence, but may only seek to overturn a state decision to withhold

8  DNA evidence in federal court if; (1) the defendant can show he has a protected liberty interest in

9  the evidence, and (2) that the state procedure leading to denial of access violates a fundamental

10 procedure of justice or is fundamentally unfair.  See Osborne, 557 U.S. at 69-72 (holding

11 defendant has burden to show inadequacy of state's remedies with regard to safeguarding an

12 identified liberty interest); Faris v. Brown, 2010 WL 3743655 (N.D. Cal. 2010) at *3 (applying

13 Osborne to deny § 1983 claim in context of California's post-conviction DNA evidence statute).

14 The Supreme Court case of Skinner v. Switzer, 31 S.Ct. 1289 (2011), clarified Osborne to some

15 extent by holding that a defendant convicted in a state court may challenge in federal court the

16 constitutional sufficiency of the state's statutory scheme for provision of post-conviction DNA

17 evidence by way of a suit under 42 U.S.C. § 1983.

18      At the outset, it is important to understand that Plaintiff's action does not involve DNA

19 evidence and so is only tangentially related to the Osborne or Skinner cases.  As the Osborne

20 court takes considerable care to point out, DNA evidence is relatively new development in the

21 context of criminal jurisprudence and has given rise to its own body of both state and federal law.

22 See Osborne, 557 U.S. at 62-63 (noting that access to DNA evidence is properly a project of

23 legislative endeavor).  It is also important to note that, unlike the cases of Osborne and Skinner, it

24 is not at all clear for the facts of this case that the contours of Plaintiff's due process rights are a

25 matter of state law given that Plaintiff was convicted in a federal proceeding in this court.

26 Finally, and most importantly, the court notes that, unlike the cases of Osborne and Skinner,

27 Plaintiff was not denied a category of evidence that was not available at time of trial.  Rather,

28 Plaintiff's attorneys were unable to procure the exhaustive chemical testing Plaintiff sought to

7

1    obtain prior to trial and has been seeking ever since.

2           As the Magistrate Judge's January 24 Order pointed out, Plaintiff's Third Amended

3    Complaint failed because Plaintiff did not identify how the actions of the Defendants deprived

4    Plaintiff of a constitutional right.  That shortcoming has not been cured in Plaintiff's 4AC.  In his

5    4AC, Plaintiff is not challenging the constitutional sufficiency of state (or federal) statutes

6    relating to the production of evidence.  He is challenging the actions of the government in failing

7    to produce the Substances for analysis.  This fact alone takes Plaintiff outside the holdings of

8    either Osborne or Skinner.  However, even if the court were to assume that Plaintiff was actually

9    trying to challenge the constitutional sufficiency of the statutes that are the cause of Plaintiff's

10   inability to procure the samples, Plaintiff's claim would still fail.  While Osborne is of limited

11   use outside the realm of DNA evidence, it does support the general proposition that the touch-

12   stone of a liberty interest in post-conviction evidence is the materiality of the evidence.  557 U.S.

13   at 63.  Fundamentally, Plaintiff's present claim under Bivins and section 1983 fails for the same

14   reason a claim for actual innocence would fail – the evidence Plaintiff seeks to prove by

15   expanded testing of the Oakley and Lancaster Substances is immaterial to his claim of actual

16   innocence.

17          Plaintiff has continuously maintained that the "complete forensic testing" of the Lancaster

18   and Oakley Substances will show that they are different from each other and different from the

19   Fresno Substance which is presumed to be the pure "bait" ephedrine provided by the California

20   Narcotic Enforcement.  While evidence establishing that the Oakley, Laqncaster and Fresno

21   Substances were each different from the other was presented at trial, the court will presume for

22   the sake of this discussion only that the additional chemical analytic data that would be provided

23   by the requested analysis would prove Plaintiff's proposition beyond any doubt.  How does that

24   proof advance Plaintiff's claim of factual innocence?

25          Plaintiff was charged with and convicted of *conspiracy* to manufacture methamphetamine

26   and *possession* of a listed precursor substance necessary for the manufacture of

27   methamphetamine – ephedrine.  Plaintiff's own analysis of the Oakley and Lancaster Substances

28   show that those Substances contained ephedrine in a form that could be used to manufacture

1    methamphetamine.  Plaintiff admits the Oakley and Lancaster Substances contain on the order of

2    40 - 50% ephedrine.  While it is true that the government made allegations at trial that the

3    Lancaster Substance was pure ephedrine representing one-half of the Fresno "bait" ephedrine and

4    that the Oakley Substance contained methamphetamine when it did not, neither of these

5    allegations are necessary or even central to Plaintiff's conviction.  The conspiracy charge was

6    supported by evidence of Plaintiff's historical familiarity in methamphetamine production, the

7    notations in his "lab notebook," the testimony of witnesses, and the finding of laboratory

8    equipment and *some* of the chemicals necessary to make methamphetamine.  It is not necessary

9    to Plaintiff's conspiracy conviction that the government show that any sample collected at any

10   location contained any methamphetamine.  Plaintiff's conviction on the charge of possession of

11   the listed substance ephedrine was provided by evidence that the Oakley and Lancaster

12   Substances *contained* ephedrine.  The purity and origins of the Lancaster and Oakley Substances

13   are immaterial to the necessary elements of either the conspiracy or possession charges.  Plaintiff

14   has not proposed, and the court cannot imagine any progression of logic that would lead from the

15   demonstration of the chemical differences between the Fresno, Oakley and Lancaster Substances

16   to Plaintiff's actual innocence.  It is undisputed that all three Substances contained ephedrine and

17   that is enough to support the verdict against Plaintiff.

18         Plaintiff is not entitled to simply troll for additional information from which he could

19   conceivably make a more weighty argument than was available at trial.  Pursuant to Bously,

20   "'Actual innocence' means *factual* innocence, not the mere legal insufficiency."  523 U.S. at 623.

21   Evidence that is material to a claim of actual innocence is not evidence that simply challenges the

22   strength of the government's evidence, it must directly and affirmatively show that the defendant

23   did not commit the acts that comprise the elements of the crimes for which he was convicted.

24   The evidence Plaintiff seeks to obtain through this action and through the pending request for

25   injunctive relief does not come close to meeting that standard.

26         At this point it is clear to the court that further amendment of Plaintiff's complaint would

27   be futile.  Having unsuccessfully availed himself of every usual opportunity to challenge his

28   conviction, Plaintiff has engaged in a protracted struggle to procure evidence that has no

9

discernable bearing on Plaintiff's effort to advance the one claim that could secure yet another judicial review of the legality of his  detention – his actual innocence.  The current action is simply another in a remarkably long series of efforts to procure evidence of the detailed composition of samples that even Plaintiff admits contain the chemical -ephedrine - that he was accused of possessing.  No amount of refinement of Plaintiff's or the court's knowledge of the composition of the samples will have any bearing at all on Plaintiff's guilt or innocence.  This is the central point that further amendment cannot cure.  Dismissal of Plaintiff's action with prejudice is therefore warranted.

THEREFORE, in consideration of the foregoing, it is hereby ORDERED that Plaintiff's Fourth Amended Complaint is hereby DISMISSED with prejudice.  All other pending motions or requests are DENIED as moot.  The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated:    October 26, 2012

_____

CHIEF UNITED STATES DISTRICT JUDGE